**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PIPELINE MEDICAL, LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **PANAJOTI CONSULTING, LLC**, <br><br> Defendant. | Civil Action No. 22-2714 (ZNQ) (JTQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon an unopposed Amended Motion for Default Judgment (the "Motion," ECF No. 19) filed by Plaintiff Pipeline Medical, LLC ("Plaintiff" or "Pipeline") against Defendant Panajoti Consulting, LLC ("Defendant" or "Panajoti"). In support of the Motion, Plaintiff filed a brief ("Moving Br.," ECF No. 19-1), a declaration of James Clark, the Director of Operations at Pipeline ("Clark Certification," ECF No. 19-2), various copies of purchase orders (ECF Nos. 19-4 to 19-11), other documents related to finances owed to Plaintiff (ECF Nos. 19-12 to 19-19, 19-23), a declaration of Zachary Ducharme, the Chief Executive Officer of Pipeline ("Ducharme Declaration," ECF No. 19-20), various email communications between the parties (ECF No. 19-21), a declaration of Kristin Emy, the Director of Finance at Pipeline ("Emy Certification," ECF No. 19-22), a July 17, 2024 declaration of Alexander Sakin, attorney for Plaintiff ("Sakin Certification" ECF No. 19-24), a copy of the Complaint ("Compl.," ECF No. 19-25), a chart showing post- and pre-judgment interest rates (ECF No. 19-26), an August 4, 2022

certification from counsel ("Certification of Counsel," ECF No. 19-27), the 2022 annual statement of Defendant (ECF No. 19-28), and an affidavit of service (ECF No. 19-29.)

After careful consideration of Plaintiff's submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **DENY** Plaintiff's Amended Motion for Default Judgment but will **TRANSFER** the case to the United States District Court for the Eastern District of Michigan under 28 U.S.C. § 1631.

I. BACKGROUND AND PROCEDURAL HISTORY

    A. FACTUAL BACKGROUND[2]

Plaintiff is in the business of selling medical products, including COVID-19 test kits, to various clients across the country, including many public health authorities. (Compl. ¶¶ 5–7.) Plaintiff routinely purchases its supplies from third party suppliers, such as Defendant. (*Id.* ¶¶ 5–6.) In response to the surge of the Omicron variant of COVID-19 in early 2022, the parties entered into various agreements and purchase orders, pursuant to which Plaintiff purchased COVID-19 test kits from Defendant. (*Id.* ¶¶ 7–12.) Plaintiff paid Defendant a total of $839,160.00 for test kits. (*Id.* ¶ 14.) However, Defendant failed to supply any of the kits, forcing Plaintiff to purchase the kits from alternative suppliers. (*Id.* ¶¶ 15–16.) Defendant partially refunded Plaintiff in the amount of $699,300.00 in February and March 2022, and then remitted Plaintiff an additional $5,000.00, but has since failed to pay the remaining $134,820.00 that it owes Plaintiff, despite repeated requests. (*Id.* ¶¶ 17–18.)

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[2] For purposes of this Motion, the Court will construe the factual allegations contained within the Complaint as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

2

**B.     PROCEDURAL HISTORY**

On May 9, 2022, Plaintiff filed the current Complaint against Defendant alleging Breach of Contract (Count I), Conversion (Count II), and Unjust Enrichment (Count III).  (ECF No. 1.) The next day, a summons was issued.  (ECF No. 4.)  Defendant was successfully served with the summons and Complaint on July 20, 2022.  (ECF No. 5.)  On August 5, 2022, the Clerk entered default as to Defendant.  (*See* entry between ECF Nos. 7–8.)  On November 30, 2022, Plaintiff filed a first motion for default judgment.  (ECF No. 10.)  That motion was administratively terminated when the Court raised subject matter jurisdiction concerns via an Order to Show Cause. (ECF No. 14.)  Thereafter, counsel for Plaintiff submitted a certification that addressed the Court's subject matter jurisdiction concerns; the Court withdrew its Order to Show Cause and re-listed the first motion for default judgment.  (ECF Nos. 16, 19-27.)

Subsequently, on June 17, 2024, the Court issued an Opinion and Order denying Plaintiff's first motion for default judgment because Plaintiff had not made the requisite showing that the Court had personal jurisdiction over Defendant.  ("June 17 Opinion," ECF Nos. 17–18 (noting that although Plaintiff complied with the procedural requirements for obtaining default judgment "Plaintiff fail[ed] to allege or argue any facts to support an exercise of personal jurisdiction over Defendant")).  Thereafter, on July 17, 2024, Plaintiff filed the instant Amended Motion for Default Judgment.  (ECF No. 19.)  As of the date of this Opinion, Defendant has failed to respond to the Complaint or appear in this action.

**II.     JURISDICTION**

Before entering default judgment, a court must make a "threshold determination" of whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over

the defendant. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015); *TM Mktg. v. Art & Antiques Assocs., L.P.*, 803 F. Supp. 994, 997 (D.N.J. 1992). The Court will address each in turn.

### A. SUBJECT MATTER JURISDICTION

The Court has diversity jurisdiction over the claims herein pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

### B. PERSONAL JURISDICTION

In addition to having subject matter jurisdiction over the claims, the Court must have personal jurisdiction over the defendant. *See Allaham*, 635 F. App'x at 36 ("While unlike subject matter jurisdiction, a court generally may not raise personal jurisdiction *sua sponte*, when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects."). A court may exercise personal jurisdiction over a defendant if it has "the authority to do so from a source of positive law (such as a statute or a rule of civil procedure)" and if exercising jurisdiction would not violate "the outer limits" set by the Due Process Clauses of the Fifth and Fourteenth Amendments. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 380–83 (3d Cir. 2022).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotation marks omitted). In determining whether there is specific jurisdiction, courts undertake a three-part inquiry. First, the defendant must have "purposefully directed [its] activities" at the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). Second,

the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984). And third, if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"The threshold requirement is that the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.'" *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102–03 (3d Cir. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476; *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *D'Jamoos*, 566 F.3d at 103. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253.

Here, Plaintiff argues that there is personal jurisdiction over Defendant because (1) Plaintiff is a New Jersey-based company, (2) Defendant's principal, Anthony Panajoti, initiated a business relationship with Plaintiff in New Jersey, evidenced by emails, and (3) Defendant paid refund payments to Pipeline's New Jersey-based account at JP Morgan Chase Bank, N.A. (Moving Br. at 1.) Plaintiff argues that by reaching out to Plaintiff in New Jersey, Defendant established a commercial relationship that is sufficient for personal jurisdiction. (*Id.* at 12.)

As a threshold matter, Plaintiff cannot establish personal jurisdiction over Defendant simply because Plaintiff is a New Jersey-based company. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (emphasizing that the inquiry is whether the *defendant*

5

took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State"). Second, it is immaterial that Defendant paid refunds to Pipeline's bank account, which is located in New Jersey. That also does not support the exercise of personal jurisdiction over Defendant in New Jersey. *See G&C Fab-Con, LLC v. M&S Civ. Consultants, Inc.*, Civ. No. 20-8425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021). The question here is whether the parties' business relationship can establish personal jurisdiction because it purportedly demonstrates that Defendant purposefully availed itself of the privileges of New Jersey's laws.[3]

The Third Circuit has made clear that a court may not exercise personal jurisdiction over a non-resident defendant simply because the non-resident defendant has contracted to do business with a resident plaintiff. *Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996). Here, Plaintiff is an LLC that is located in New Jersey and Defendant is an LLC that is located in Michigan. (Compl. ¶¶ 1–2.) Other than pointing out that Plaintiff is located in New Jersey, the Complaint, Moving Brief, and the Motion's accompanying declarations fail to show how the transactions at issue between the parties affected New Jersey or, more importantly, how Defendant purposefully availed itself of this forum. *O'Connor*, 496 F.3d at 317. In this regard, the law is clear that purchase orders, standing alone, are insufficient for the exercise of personal jurisdiction over Defendant. *See Grand Entm't Grp.*, 988 F.2d at 482 ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum'") (quoting *Burger King,* 471 U.S. at 478); *Mellon Bank (East) v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant") (citing *Mellon*

---

[3] Defendant maintains no offices in New Jersey. (Certification of Counsel, ¶¶ 6–8.) Similarly, Defendant is not licensed to do business in New Jersey. (*See* ECF No. 19-28.) Because Defendant lacks any "continuous and systematic" presence in New Jersey, general jurisdiction in New Jersey does not exist in this action. *O'Connor*, 496 F.3d at 317.

*Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992)). Accordingly, the various exhibits submitted in support of the Motion fail to show how prior negotiations or the parties' course of dealing support the exercise of specific personal jurisdiction over Defendant.

Instead, the Clark Declaration states that "Pipeline's clients expressed interest in COVID-19 test kits manufactured by iHealth Labs, a California-based manufacturer of healthcare products. Panajoti Consulting held itself out as willing and able to supply the iHealth kits, which Panajoti Consulting stored at various warehouses in California." (Clark Declaration ¶ 4.) Thereafter, Plaintiff indicated that James Clark wrote to Anthony Panajoti that Pipeline was considering the purchase of four pallets of iHealth COVID-19 kits. (*Id.* ¶ 5.) The following day, Plaintiff sent Defendant a purchase order. (*Id.* ¶ 7.) However, the Ducharme Certification states that it was Defendant who first reached out to Plaintiff, and that the parties had "daily contact." (Ducharme Certification ¶¶ 6, 7.) This is the first allegation in the declarations or Complaint where Defendant allegedly first reached out to Plaintiff. Nevertheless, that reach does not establish personal jurisdiction over Defendant. *See DiVeronica Bros., Inc.*, 983 F.2d at 557. Additionally, Plaintiff submitted various WhatsApp communications with Defendant. The Court has reviewed those communications and finds that they do not support the exercise of specific personal jurisdiction over Defendant because they do not show a deliberate targeting of New Jersey by Defendant. (*See* ECF No. 19-3.)

Plaintiff argues that there is personal jurisdiction over Defendant in part relying on *Apollo Technologies Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1185 (D.N.J. 1992). *Apollo*, however, is distinguishable because there, the defendant (1) initiated communication with the plaintiff, (2) reached into New Jersey to establish contacts with the plaintiff, (3) had more of a relationship with the plaintiff than is the case here, (4) traveled to New Jersey as part of establishing

7

the terms of the underlying contract at issue, and (5) executed the contract in New Jersey upon its visit. *Id.* at 1185. No similar allegations were provided to the Court in this case.

Accordingly, the Court again finds that Plaintiff has failed to establish this Court's personal jurisdiction over Defendant. Plaintiff's Amended Motion for Default Judgment (ECF No. 19) will therefore be **DENIED**.

### III.   TRANSFER

Plaintiff requests in the alternative that if the Court denies the Motion, the case be transferred to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1406(a). (Moving Br. at 12.) A transfer, according to Plaintiff, would be "in the interest of justice . . . because [] dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." (*Id.* (citing *Lee v. Super King Sauna NJ*, Civ. No. 11-2710, 2011 U.S. Dist. LEXIS 94379, at *8–9 (E.D. Pa. Aug. 17, 2011) and *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962))). Although not brought as a formal motion, the Court will interpret Plaintiff's request to transfer this case as a motion to transfer venue.

Insofar as the Court has already concluded that it lacks personal jurisdiction over Defendant, it must consider whether to transfer this matter under 28 U.S.C. § 1631 rather than § 1406 cited by Plaintiff. *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 224 (3d Cir. 2016) ("[T]he statutory provision applicable in these circumstances is arguably not 28 U.S.C. § 1406(a), but rather 28 U.S.C. § 1631, which governs transfer when there is 'a want of jurisdiction.'" (citing 28 U.S.C. § 1631)); *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (explaining that "a district court that lacks personal jurisdiction must at least consider a transfer" under 28 U.S.C. § 1631).

28 U.S.C. § 1631 provides that

> [w]henever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

In determining whether transfer is appropriate under 28 U.S.C. § 1631, a court will consider (1) whether the action "could have been brought" in the transferee district, and (2) if transfer is in the interests of justice. *Lehrer v. Blue Mountain Ski Area & Resort*, Civ. No. 23-2762, 2024 WL 1928459, at *2 (D.N.J. Apr. 30, 2024) (quoting *Shepler v. Big Sky Resort*, Civ. No. 20-6839, 2020 WL 6786028, at *3 (D.N.J. Nov. 2, 2020)). To satisfy the first prong, the transferee court must have (1) subject matter jurisdiction, (2) venue, and (3) personal jurisdiction. *Id.* In determining these factors, the Court will apply the law of the transferee forum. *Id.* (citing *Kim. v. Korean Air Lines Co. Ltd.*, 513 F. Supp. 3d 462, 472 (D.N.J. 2021)). For the second prong, a court's evaluation is discretionary. *Id*. (citing *Smith v. Bishop*, Civ. No. 20-12526, 2023 WL 128786, at *3 (D.N.J. Jan. 9, 2023)). Transferring a case will generally "be in the interest of justice because [] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Id*. (citing *Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004)).

Here, the Eastern District of Michigan has subject matter jurisdiction over the action under 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

With respect to venue, Plaintiff has submitted exhibits to the Court that establish venue is proper in the Eastern District of Michigan. The August 4, 2022 declaration of counsel states that "Defendant Panajoti Consulting LLC has . . . one member—Anthony Panajoti," (Certification of Counsel ¶ 6); that "Anthony Panajoti is an individual and . . . a citizen of the state of Michigan,"

9

(*id.* ¶ 7); that Defendants registered office is located at 121 Forthton Dr. in Troy, Michigan; that its resident agent is Anthony Panajoti, located at 121 Forthton Dr. in Troy, Michigan; and that Anthony Panajoti signed Panajoti's Annual Statement as a member.  (*Id.* ¶ 8.)  *See* 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides").  Moreover, Defendant, who would receive the benefit of any sale in Michigan, allegedly failed to send the COVID-19 test kits to Plaintiff.  These facts establish that the relevant events took place in Michigan.[4]  *See* 28 U.S.C. § 1391(b)(2) (providing that a civil action may be brought in any district "in which a substantial part of the events or omissions giving rise to the claim occurred").

In addition to subject matter jurisdiction and venue, before transferring the case to the Eastern District of Michigan, the Court must also ensure that the transferee court has personal jurisdiction over Defendant.  The Sixth Circuit has characterized a plaintiff's burden of establishing personal jurisdiction as "relatively slight."  *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).  Personal jurisdiction may be either general or specific.  *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007).  General jurisdiction depends on continuous and systematic contacts with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant.  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997).  Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state.  *Id.*

Relevant here, for purposes of general jurisdiction, corporations (and by extension, limited liability companies) are "at home" in their place of incorporation or principal place of business.  *Magna Powertrain De Mexico S.A. De C.V. v. Momentive Performance Materials USA LLC*, 192

---

[4] The Court takes judicial notice of the fact that Troy is located in Oakland County, Michigan, over which Eastern District of Michigan exercises jurisdiction.

F. Supp. 3d 824, 828 (E.D. Mich. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014)). Notably, Michigan Compiled Laws § 600.731 permits a court to exercise general jurisdiction over a limited liability company if the company (1) was formed under the laws of Michigan; (2) consents to a lawsuit; or (3) carries on a "continuous and systematic part of its general business" within Michigan. *Torongo v. Dolce Int'l German Mgmt. GmbH*, Civ. No. 13-12343, 2014 WL 12660032, at *3 (E.D. Mich. June 24, 2014).

Here, the Complaint states that Defendant is a limited liability company organized under the laws of Michigan and has its principal office located in Troy, Michigan. (Compl. ¶ 2.) Additionally, (1) the Clark Declaration states that Defendant is a Michigan-based supplier of COVID-19 antigen kits (Clark Declaration ¶ 2), (2) the copies of the purchase invoices in the Record reveal that Defendant's business address is 121 Forthton Drive, Troy Michigan (ECF No. 19-11), and (3) the annual statement in the Record demonstrates the same. The Record also reveals that Anthony Panajoti is a citizen of Michigan and the sole member of Defendant. (*See* Moving Br. at 10; Certification of Counsel ¶¶ 6, 7). Accordingly, the Court is satisfied that under Michigan law, Defendant is "at home" in Michigan for purposes of general jurisdiction.

As a final matter, a transfer under 28 U.S.C. § 1631 must be in the interests of justice. *See* 28 U.S.C. § 1631. The Court finds that transfer would be in the interest of justice as it will maintain continuity in the case and preserve Plaintiff's causes of action against Defendant. As mentioned, "[w]hen jurisdiction is clearly available in another court, as here, . . . 'transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.'" *Smith*, 2023 WL 128786, at *3 (quoting *SM Fin. Servs. Corp. v. Blue Cross Blue Shield of Tex.*, Civ. No. 19-17497, 2020 WL 7869213, at *2 (D.N.J. July 16, 2020)). Courts also transfer cases over which they lack personal jurisdiction for purposes of convenience and

11

efficiency.  *See Pfizer Inc. v. Apotex Inc.*, Civ. No. 08-00948, 2009 WL 10738617, at *2 (D. Del. Sept. 28, 2009) (explaining that the case could be transferred in part based on judicial economy); *Young v. Well Fargo Auto*, Civ. No. 22-4509, 2023 WL 1071649, at *4 (E.D. Pa. Jan. 27, 2023) (noting that an action may be transferred to avoid a potentially "time-consuming" refiling, and to preserve continuity in the case); *Allegheny Valve and Coupling, Inc. v. H&H Metal Specialty, Inc.*, Civ. No. 07-322, 2008 WL 11374347, at *5 (W.D. Pa. Sept. 30, 2008) (transferring the case in part based on "principles of sound judicial administration and practicality").  Here, transferring the case will prevent Plaintiff from spending additional time refiling the suit, and allow the matter to proceed as expeditiously as possible.

Accordingly, this matter will be **TRANSFERRED** to the United States District Court for the Eastern District of Michigan.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Amended Motion for Default Judgment will be **DENIED**.  This case will be **TRANSFERRED** to the United States District Court for the Eastern District of Michigan.  An appropriate Order will follow.


Date: February 4, 2025

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**